NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220287-U

NO. 4-22-0287

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 2, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* E.J., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
|      Petitioner-Appellee, | ) | No. 19JA425 |
|      v. | ) | |
| Montell J., | ) | Honorable |
|      Respondent-Appellant). | ) | Mary Linn Green, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices DeArmond and Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment terminating respondent's parental rights, as no meritorious issues could be raised on appeal.

¶ 2    On March 25, 2022, the trial court entered an order terminating the parental rights of respondent, Montell J., to his daughter, E.J. (born September 29, 2019). Respondent appealed. Appellate counsel now moves to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *In re S.M.*, 314 Ill. App. 3d 682 (2000), on the basis that he cannot raise any potentially meritorious argument on appeal. Counsel's notice of filing and proof of service indicate he sent a copy of his motion and brief to respondent by mail. This court allowed respondent until June 24, 2022, to file a response. No response was filed. After reviewing the record and counsel's brief, we grant counsel's motion to withdraw and affirm the judgment of the trial court.

¶ 3                                    I. BACKGROUND

¶ 4             On October 7, 2019, the State filed a petition for adjudication of wardship regarding

E.J., naming Aubreanna A. as the mother and respondent as the father. The petition alleged E.J.

was neglected in that she was in an environment injurious to her health and wellbeing due to her

mother's substance abuse problem. (Aubreanna A.'s parental rights were terminated at the same

time as respondent's, but she is not a party to this appeal.) The petition also alleged E.J. was born

with cocaine or a metabolite thereof in her urine, blood, or meconium. The trial court entered an

order placing E.J. in the temporary custody of the Department of Children and Family Services

(DCFS). E.J. was placed with her paternal grandmother because, although the concern was with

Aubreanna's substance abuse, respondent and Aubreanna maintained a relationship. Lutheran

Social Services of Illinois (LSSI) acted as DCFS's agent for case management services.

¶ 5             On November 21, 2019, the trial court entered an adjudicatory order upon the

"parents' stipulation" as to the count alleging the mother's substance abuse problem. On June 17,

2020, the court entered a dispositional order, finding respondent unfit or unable to care for E.J.

and making E.J. a ward of the court.

¶ 6             On March 12, 2021, the State filed a motion to terminate respondent's parental

rights, alleging he was an unfit parent because he failed to (1) maintain a reasonable degree of

interest, concern, or responsibility as to the minor's welfare (750 ILCS 50/1(D)(b) (West 2020));

(2) make reasonable efforts to correct the conditions that caused the minor to be removed during

a nine-month period after adjudication (750 ILCS 50/1(D)(m)(i) (West 2020)); and (3) make

reasonable progress toward the return of the minor to his care during a nine-month period after

adjudication (750 ILCS 50/1(D)(m)(ii) (West 2020)). The State named two nine-month periods:

November 22, 2019, to August 22, 2020, and June 11, 2020, to March 11, 2021.

¶ 7        After several continuances, on October 7, 2021, the trial court began the fitness hearing. First, Heather Stark, the LSSI caseworker beginning in September 2020, testified as follows. According to the integrated assessment, respondent's tasks included "[s]ubstance abuse, sexual abuse as well as mental health treatment."

¶ 8        Stark said respondent was also required to appear for random drug tests. Throughout the life of the case, he appeared for only two, which were positive for cannabis. He did however participate in a substance-abuse assessment.

¶ 9        Respondent was required to not only participate in a mental-health assessment but to attend individual psychotherapy at the provider Aunt Martha's Rockford Community Health Center. He did neither.

¶ 10        The requirement for respondent to attend sex-offender therapy was based on a prior sex-offense conviction. Although respondent indicated he had already completed the therapy, he failed to provide proof of successful completion, so he was required to participate in a sex-offender evaluation at the provider One Hope United. He failed to do so.

¶ 11        Stark testified "[d]omestic violence services" were added to respondent's case plan in the summer of 2020 because he had a history of being an offender. He was to participate in an initial evaluation, which he did not complete.

¶ 12        Stark also testified respondent did not "tak[e] advantage of the visitation" with E.J. between September 2020 through March 2021. Again, E.J. was placed with respondent's mother but the visitation was to be supervised by a case aide. Respondent did not attend any visits. In March 2021, when the goal was changed to substitute care, respondent had not visited the minor since August 2020.

¶ 13          The State rested and the hearing continued the next day, October 8, 2021. Respondent testified he was not employed but was receiving unemployment compensation. He had his own "residence." He testified he was convicted of a sex offense in 2007 for soliciting a juvenile prostitute when he was 24 years old. He received a sentence of 30 months' probation. As part of the sentencing requirements, respondent completed a sex-offender evaluation at Mathers Clinic in 2007. At that time, he was identified as a low-risk offender, which required him to attend weekly classes. Respondent testified he successfully completed the treatment and has not been arrested for any sex offense since. He was required to register as a sex offender for 10 years. In 2013, he pleaded guilty to failing to register so, "they started [his] time over."

¶ 14          Respondent testified he was "engaged" in visits with E.J. throughout the case, as he tried "to be as much of a father as [he] could in the situation." Since E.J. was with his mother initially, he was "able to be a father" by helping his mother with anything she needed. He bought clothes, shoes, a car seat, and "numerous amounts of things" for E.J.

¶ 15          Respondent explained he did not complete "all of" the drug drops due to his work hours. He acknowledged his history of mental illness and said he was honest during his mental health assessment in June 2021. He also acknowledged his "several convictions," many of which "stem[med] from [his] earlier years when [he] was growing, no father around."

¶ 16          On cross-examination, respondent testified he recalled LSSI requesting a new sex-offender assessment since the older records were not available. He said he did not complete a new one because he could not afford it and did not know DCFS would have paid.

¶ 17          Respondent acknowledged he was arrested for "aggravated domestic" in May 2020 and only called to schedule the domestic-violence assessment "about a month ago." He blamed

Stark for the lack of communication, but he admitted he knew LSSI was involved "the whole time."

¶ 18    Respondent acknowledged he was in prison between 2013 and 2015 on a "Class 1 drug charge." While he was serving his sentence, "they took [him] off of [his] mental health medications" and he did not attempt to resume them, even during his personal "crisis" in May 2020 when he lost his job and was in the midst of this case. He said he has not seen a psychiatrist or participated in individual counseling since E.J. was born.

¶ 19    Respondent stated he "never personally contacted [LSSI]. [He] never had a reason to" because he had scheduled visits.

¶ 20    Respondent admitted that in May 2020, at the time of the "domestic incident," he was also charged with attempting to flee or elude an officer, resisting arrest, possession of a controlled substance, and driving while revoked. He said he was also found with a digital scale, ecstasy in the vehicle, and cannabis in his pocket. Respondent admitted he was arrested and charged but emphasized he was not convicted.

¶ 21    On November 1, 2021, the fitness hearing continued with respondent's cross-examination and Aubreanna's testimony. She testified she and respondent were "still currently in a romantic relationship." However, she exercised her fifth amendment privilege against self-incrimination regarding any questions relating to a domestic disturbance with respondent on May 25, 2020, as charges related to that incident were pending against her.

¶ 22    On December 3, 2021, the fitness hearing continued with the State's rebuttal witness, Officer Sarah Stinson, who testified regarding the May 25, 2020, domestic-violence incident. Stinson testified family members told her respondent was "having some type of psychotic episode" and was engaged in a struggle with Aubreanna. Stinson found the two upstairs and was

able to separate them. Aubreanna told the officer the minor was present in the room. The officers took respondent to the hospital for a psychological evaluation but before the evaluation was completed, it was determined respondent was going to be arrested for domestic battery. All parties rested.

¶ 23 On March 25, 2022, in respondent's absence, the trial court announced its decision on fitness. After considering the evidence and arguments of counsel, the court found respondent unfit on the three grounds alleged in the State's petition. The court commented on respondent's failure to (1) provide proof of his prior sex-offender treatment or engage in it anew, (2) participate in a mental health assessment, (3) engage in individual therapy, and (4) provide proof of completion of a domestic violence program. The court further noted respondent's completion of only two drug drops during the life of the case, both of which were positive for cannabis. The court noted respondent never made inquiries about the minor's medical, educational, or developmental well-being. He stopped visiting E.J. in August 2020.

¶ 24 The trial court also mentioned respondent's domestic-battery arrest in May 2020 and the fact he was "charged but not convicted" of resisting arrest, fleeing or eluding, possession of a controlled substance, and driving while his license was revoked. The court noted the police found ecstasy, a scale, and cannabis in defendant's pockets.

¶ 25 The trial court proceeded immediately to the best-interest portion of the hearing. The State asked the court to take judicial notice of the evidence and testimony presented during the fitness hearing as well as the best-interest reports filed.

¶ 26 Jocelyn Howard, the LSSI caseworker since August 25, 2021, testified regarding the current placement for E.J., who was then two years old. E.J. had been in her current traditional foster placement since March 31, 2021, where she lives only with her foster mother. Howard

described E.J. as "a very active little girl." The foster mother provides for all E.J.'s needs and supports her involvement in developmental and social/emotional therapies. The two of them have a "very loving" relationship. E.J. receives unconditional love, support, nurturing, and attention in the home. In Howard's opinion, E.J. is in a consistent, safe, and permanent placement. The foster mother has expressed her desire to adopt E.J.

¶ 27        The foster mother made a statement to the trial court about her relationship with E.J. She said E.J. has "grown substantially" in the past year in terms of her personality, verbal skills, and socialization. The two have bonded. She said E.J. enjoys playing with their dog, visiting extended family, and helping her coach high school cheerleaders. Both the foster mother and E.J. are biracial, with Caucasian mothers and African-American fathers, which allows E.J. to experience both cultures.

¶ 28        After considering the evidence, witness testimony, the statutory best-interest factors, and arguments of counsel, the trial court found the State sufficiently proved "by at least a preponderance of evidence that it is in this minor, [E.J.]'s, best interest that the parental rights of her biological mother *** and biological father[, respondent,] are hereby terminated, and their parental rights are hereby terminated pursuant to those proofs."

¶ 29        This appeal followed.

¶ 30                                    II. ANALYSIS

¶ 31        On appeal, appellate counsel seeks to withdraw on the basis that he cannot raise any arguments of potential merit.

¶ 32        The procedure for appellate counsel to withdraw set forth in *Anders*, 386 U.S. at 738, applies to findings of parental unfitness and termination of parental rights. *S.M.*, 314 Ill. App. 3d at 685. Under this procedure, counsel's request to withdraw must "be accompanied by a brief

referring to anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744. Counsel must "(a) sketch the argument in support of the issues that could conceivably be raised on appeal, and then (b) explain why he believes the arguments are frivolous." *S.M.*, 314 Ill. App. 3d at 685. Counsel must then conclude the case presents no viable grounds for appeal. *Id.* In doing so, counsel should review both the unfitness finding and the best interest determination and indicate in the brief that he or she has done so. *Id.* at 686.

¶ 33    In the instant case, counsel asserts he has reviewed the record on appeal, including the report of proceedings of the termination hearing, and has concluded there are no appealable issues of merit. Counsel asserts he has considered raising the argument that the trial court's finding of unfitness was against the manifest weight of the evidence. He also indicates he has considered raising the argument the State failed to prove by a preponderance of the evidence it was in E.J.'s best interest to terminate respondent's parental rights. He further indicates he has considered raising the argument the trial court abused its discretion in allowing the State's motion to continue the fitness hearing for the purpose of calling a witness in rebuttal. We address each argument in turn and ultimately agree with counsel's conclusion there are no issues of arguable merit to be raised on review.

¶ 34                    A. Finding of Parental Unfitness

¶ 35    Parental rights may not be terminated without the parent's consent unless the trial court first determines, by clear and convincing evidence, the parent is unfit as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). Pursuant to section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)), a parent may be found unfit if he fails to (1) maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare (750 ILCS 50/1(D)(b) (West 2020)), (2) make reasonable

efforts to correct the conditions that were the basis for the removal of the child from the parent during any nine-month period following adjudication (750 ILCS 50/1(D)(m)(i) (West 2020)), or (3) make reasonable progress toward the return of the child to the parent during any nine-month period following adjudication (750 ILCS 50/1(D)(m)(ii) (West 2020)).

¶ 36 "A trial court's determination that a parent's unfitness has been established by clear and convincing evidence will not be disturbed on review unless it is contrary to the manifest weight of the evidence." *Gwynne P.*, 215 Ill. 2d at 354.

¶ 37 Here, the State alleged respondent was unfit on the three grounds mentioned above and specified two applicable nine-month time periods: November 22, 2019, to August 22, 2020, and June 11, 2020, to March 11, 2021. The trial court found the State had established all three grounds of unfitness by clear and convincing evidence.

¶ 38 The trial court's finding of unfitness was not against the manifest weight of the evidence. Stark's testimony demonstrated respondent failed to comply with virtually all the services outlined in his case plan. This failure to comply with the case-plan directives justifies a finding of unfitness on all three grounds alleged. Although each is a separate ground for finding a parent unfit, and each is judged under separate and different parameters, a parent's failure to comply with the recommended tasks could satisfy all three grounds. See *In re Jaron Z.*, 348 Ill. App. 3d 239, 259 (2004) (stating noncompliance with an imposed service plan is sufficient to warrant a finding of unfitness under subsection (b)); *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1068 (2006) (stating a parent's failure to engage in service-plan directives supports a finding of unfitness under subsection (m)(i)); *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046 (2007) (stating the extent of the parent's compliance with the service plans during a designated nine-month time period determines the benchmark for measuring his "reasonable progress" under subsection (m)(ii)).

¶ 39 The trial court specifically found respondent failed to comply with the following case plan directives: (1) sex-offender treatment, (2) mental-health assessment and treatment, (3) individual therapy, (4) domestic-violence counseling, (5) participation in random drug drops, (6) consistent visits with E.J., and (7) consistent and prolonged cooperation with the agency. Even though only a single alleged ground for unfitness, if supported by clear and convincing evidence, is necessary to terminate a parent's rights (*Gwynne P.*, 215 Ill. 2d at 349), we find respondent's failure to actively engage in these recommended services supports the court's finding of unfitness on all three grounds. Further, we find not only was the court's finding of unfitness not against the manifest weight of the evidence, but we find no reasonable or meritorious argument could be made to the contrary.

¶ 40 B. Best Interest Determination

¶ 41 Appellate counsel indicates he considered arguing the trial court's best interest finding was not supported by the applicable statutory factors because the court failed to identify with specificity the factors upon which it relied in making its decision.

¶ 42 When a trial court finds a parent to be unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352 (2004). In making the best interest determination, the court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-3(4.05) (West 2020)). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the

child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

"The court's best interest determination not need contain an explicit reference to each of these factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19.

¶ 43 At a best-interest hearing, the State must prove by a preponderance of the evidence that termination of parental rights is in the best interest of the minor. *D.T.*, 212 Ill. 2d at 367. On review, "[w]e will not disturb a court's finding that termination is in the children's best interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005).

¶ 44 Here, while the trial court did not expressly reference section 1-3(4.05) of the Act, it explicitly stated it "considered all the statutory best[-]interests factors as [they] relate to this minor's age and developmental stage." The court considered the testimony of Howard and the foster parent. Howard testified E.J. was bonded with her foster parent and seemed secure in the home. Howard had no concerns as it related to this placement, which was considered a permanent placement.

¶ 45 The foster parent testified to her dedication to and love for E.J. She said E.J. was doing well in her home and she was committed to providing E.J. permanency through adoption.

She was providing E.J. with all her medical, emotional, and physical needs and was supportive of E.J.'s involvement with various therapies.

¶ 46 Based on this record, including the consideration of the applicable best-interest factors, we conclude the trial court's best interest finding was not against the manifest weight of the evidence.

¶ 47 C. Motion to Continue

¶ 48 Finally, appellate counsel indicates he considered arguing the trial court abused its discretion in allowing a continuance of the fitness hearing on the State's motion. The State sought a continuance for the purpose of calling a witness in rebuttal after Aubreanna pleaded her fifth amendment right against self-incrimination. Respondent objected to the continuance.

¶ 49 Our legislature has recognized "serious delay in the adjudication of abuse, neglect, or dependency cases can cause grave harm to the minor and the family and that it frustrates the health, safety and best interests of the minor and the effort to establish permanent homes for children in need." 705 ILCS 405/2-14(a) (West 2020). In juvenile cases, "[t]he court may continue the hearing 'only if the continuance is consistent with the health, safety and best interests of the minor.' " *In re K.O.*, 336 Ill. App. 3d 98, 104 (2002) (quoting 705 ILCS 405/2-14(c) (West 2000)). Further, a motion for a continuance must be filed 10 days prior to the hearing, or "upon the court's own motion and only for good cause shown." 705 ILCS 405/2-14(c) (West 2020). "It is within the juvenile court's discretion whether to grant or deny a continuance motion, and the court's decision will not be disturbed absent manifest abuse or palpable injustice." *K.O.*, 336 Ill. App. 3d at 104. A litigant does not have an absolute right to a continuance. *K.O.*, 336 Ill. App. 3d at 104. However, unless the complaining party has been prejudiced, the denial of a motion to continue is not grounds for reversal. *K.O.*, 336 Ill. App. 3d at 104.

¶ 50  Here, the State admitted it made an "oversight" in not having the rebuttal witness available because it had anticipated Aubreanna would plead the fifth amendment. Nevertheless, the trial court granted the motion, scheduling the continued hearing for one month later.

¶ 51  Any challenge to the 30-day continuance would be frivolous, as respondent could not demonstrate any prejudice from the delay. In fact, it could have worked in defendant's favor with further time to prepare and/or demonstrate at least some compliance with services. On this record, this court would find the trial court did not abuse its discretion in allowing the State's motion to continue.

¶ 52         III. CONCLUSION

¶ 53  For the reasons stated, we allow appellate counsel to withdraw and affirm the trial court's judgment.

¶ 54  Affirmed.